JAMES T. McCOBB *versus* WILLIAM RICHARDSON & *al. Ex'rs.*

Where the fact is equally unknown to both parties; or where each has equal information; or where the fact is doubtful from its own nature; in every such case, if the parties have acted with entire good faith, a court of equity will not interpose.

Where there was a sale of timber lands, lying in the wilderness, remote from the residence of the parties, which neither had ever seen, and of which neither had any other knowledge than from the certificates, then in the possession of a third person, and to which they had equal access, of two individuals, equally unknown to the parties, wherein was stated the amount of timber the signers thereof said they believed from examination to be upon the land; and no other representations were made by the seller to the purchaser than a mere reference to those certificates; but when in fact, as it afterwards turned out, there was not one fifteenth part of the timber upon the land, at the time, that there was represented to have been in the certificates; this is not such a case of mutual mistake as will authorize a court of equity to rescind the contract, and decree a restoration of the purchase money.

THIS was a bill in equity, and was heard on bill, answer and proof.

On July 6, 1835, the plaintiff purchased of James Hall, the testator, his interest in one undivided eighth part of a tract of twelve thousand acres of land in the County of Washington, by virtue of a bond from the owners thereof, at four dollars and one eighth of a dollar per acre. Hall had purchased one fourth of the same tract, on June 10, 1835, at the same price per acre.

The facts stated in the opinion of the Court are sufficient to understand the grounds of the decision.

The case was fully argued by

*N. Weston,* for the plaintiff; and by

*Wells,* for the executors.

The main positions on which the counsel for the plaintiff claimed to maintain the bill are stated in the opinion of the Court. In support of his argument, the plaintiff's counsel cited 1 Story's Eq. § 140, 142; Evans' Pothier on Oblig. p. 1, c. 1, note 18; 2 Kent, 468; 17 Ves. 394; 4 Mason, 418; *Hammond* v. *Allen,* 2 Sumn. 387; same case, 11 Peters, 63; *Daniel* v. *Mitchell,* 1 Story's R. 172; 1 Green's Ch. R. 277.

McCobb *v.* Richardson.

The code Napoleon gives relief in mistakes as to the quantity of land conveyed, and so does the code of Louisiana.

That the plaintiff was not barred of his rights by the lapse of time, the statute of limitations not having been pleaded. 2 Saund. 283, note 2; Gould on Pl. 332; 3 P. Wms. 126; 2 Story's Eq. § 1521; Angel on Lim. 333; 2 Wms. Ex'rs. 1110.

The counsel for the executors of Hall's will, examined the cases cited in support of the bill, and insisted that they did not apply to a case like this. Here was no fraud, and the parties had precisely the same knowledge, and means of knowledge of where the land was and what was upon it, and the purchase was made without seeking more information. Had the bargain been favorable, the plaintiff would have had the whole benefit of it, and the seller could not have avoided the sale, and recovered back the money, or have claimed any portion of it. And as it proves that he loses, he cannot call on the representatives of Hall to make up the loss to him. The plaintiff *purchased*, to take his chance of gain or loss. This must have been understood from the very nature of the property. The only mistake in the matter was in keeping the land too long on hand. There is no more ground for supporting this bill, than one to rescind a contract for the purchase of a lottery ticket, after it had been kept on hand until it had drawn a blank; or where pork, or flour, had been fairly purchased at the then market price, under the expectation of a good speculation by a further advance in price, when it proved that the price fell instead of rising. Here was no mistake of facts, but merely an ignorance of facts. He cited Story's Eq. § 140 to 151; *Bean* v. *Herrick*, 20 Maine R. 51; *Sanborn & Bell* v. *Stetson*, in the Circuit Court of U. S. in Massachusetts, by Judge Story, not then reported. To show that contracts in reference to lands are to be treated as other contracts. *Dudley* v. *Littlefield*, 21 Maine R. 418.

If the plaintiff originally had any cause of complaint, he had lost it by his delay. Although the statute of limitations was not pleaded, the Court will not, as a court of equity, entertain a stale demand. Story's Eq. § 529.

The opinion of the Court was drawn up by

WHITMAN C. J. — We have here another instance of the singular infatuation, with which many individuals were seized in the years 1835 and 1836. The plaintiff, then a young man, and but then recently introduced into business in the profession of the law, was induced to embark in the purchase of timber lands; and to invest between five and six thousand dollars, constituting the greater portion of his patrimony, in lands of that description; lying remote from his place of residence, in the wilderness part of this State, to which he had never had access, and of which he had no knowledge; relying for their quality upon the certificates of two individuals, of whom he had only heard a favorable report. In so purchasing, however, he was not singular. Many other individuals did the like. His grantor, a man of mature years, had purchased the same land, under circumstances precisely similar, as to the state of his knowledge, and for the identical price at which he sold to the plaintiff. It turns out, nevertheless, that the intrinsic value of the land was not, probably, over one tenth part of the amount paid for it.

The plaintiff in his bill alleges that the defendant's testator induced him to purchase those lands by the means of misrepresentation; or that the purchase and sale were made under mutual mistake. Of wilful misrepresentation, or indeed of any representation, as of his own knowledge, or even of belief, on the part of the testator, the evidence does not furnish the slightest pretence. He had purchased, confiding in the same· sources of information, as to value, to which he referred the plaintiff; and to which they each had equal access. The testator pretended to no other knowledge on the subject than was there exhibited; viz, two certificates, then in the possession of a third person, of two individuals, who where equally unknown to the parties contracting. That the latter were under mutual misapprehension as to the intrinsic value of the premises, there can be no doubt. The only question is, was this a case of such mutual mistake as will authorize the maintenance of this bill.

On this branch of the law, it may be conceded, that there is not entire perspicuity. What shall be deemed such a mutual mistake, as will authorize the rescinding of a contract, it is not easy, in every case, to determine. Where the parties to a contract of sale are under a mutual misconception, as to a distinct, essential and certain particular of it, as for instance, the existence of a dwellinghouse, contracted to be sold, with the lot on which it had been known to stand, but which, by a flood or otherwise, had been destroyed, and that without the knowledge, at the time, of either of the parties. The house would be the thing certain, understood by both parties to be essentially the moving cause to the contract, and the principal thing intended to be conveyed; and it turning out, that the vendor had not the thing in being, which he supposed he was about to convey, it would indeed be unreasonable to hold the other party to the bargain.

It is urged here, that the timber was the thing contracted for; and that the land was but the incident, the place of deposite merely, the land without the timber being of very little, if of any, value; that both parties at the time supposed it to be covered with a valuable growth of timber, when in fact the timber thereon was from ten to twenty times less than was supposed. But there is much of fallacy in the position of the plaintiff. There was no fixed and certain item of timber, distinctly and identically in the mind of each party, as intended to be conveyed, as in the case of the dwellinghouse before instanced. Neither party could have pretended to have any certain knowledge of what was growing upon the land. Neither had ever seen it. The land itself was a specific thing, distinctly in the mind of each party; but of what was growing upon it no precise idea could be entertained. The value of the growth upon a piece of land is always a matter of uncertainty. Estimates concerning it, even by those who have had the best means of forming an opinion, are more or less merely conjectural; and are often void of the truth; and it is familiar knowledge, that nothing is more difficult than to ascertain with precision the quantity and quality of a forest growth, on a

large tract of land, in a wilderness country. This the parties must be presumed to have well understood. Neither can be supposed, in such case, to have contracted with the other in the belief, that either had any certain knowledge on the subject. Bargains of this description are necessarily made haphazard. Each party speculates, grounding his calculations upon such general information as may be at hand, placing reliance upon his own perspicacity.

This contract was entered into in days notorious for speculation, when but few if any persons, made purchases of timber lands for private use, the object being to sell again at a profit; until which, some operations, by way of getting off timber, might take place. Mistakes of the kind here complained of were without number; all understanding, from the beginning, that no inconsiderable share of hazard was to be encountered. In the absence of fraudulent or erroneous representations, or fraudulent practices on the part of the vendor, it could never have been contemplated, however gross might be the mistake on the part of the vendee, that, in case of loss, he had any ground of complaint; and if fortunate enough to buy ever so advantageously, however great the mistake of the vendor might have been, no one could have supposed, that any portion of his gains was to be refunded.

The case of the plated candlesticks, cited on the part of the plaintiff, supposed to be sold by mistake for solid silver, is surely unlike the case here. Silver candlesticks and plated candlesticks are different articles. Besides, the parties both intended, the one to sell and the other to buy, silver candlesticks. The delivery of plated candlesticks would be a sheer mistake, contrary to the clear intent of both parties. Here the land was sold. This was a thing certain in the view of both parties. If other land had been conveyed, instead of it, it would have been a mistake, which should have been rectified. What there was upon it, was a different matter. No one could have had any definite or precise idea concerning it; especially under the circumstances of this case. The similitude between this case, and that of candlesticks sold *as and for plated,*

neither party knowing any thing of the thickness of the plate, would be somewhat nearer, if a certificate of a third person, supposed to be a competent judge, were resorted to for the purpose of enabling the parties to fix a price upon them, and it should be proved, by using them, that the estimation was erroneous; and the similitude would be still increased, if it had appeared, that the seller had purchased by the same estimation. In such case it is believed, that the buyer would have no right to rescind the contract, or to recover in equity for the difference in value. So if a horse were sold and purchased, without warranty of soundness, upon an erroneous estimation of its value by a third person, the vendor knowing nothing of any defects in the horse, if, upon a trial, it proved in a great measure worthless, the buyer would have no ground of complaint against the seller. The buyer must calculate to be subject to such risks, whenever there is perfect innocence on the part of the seller.

The case put by the counsel for the plaintiff of a bale of goods, accompanied with an invoice, bears no similitude to the one here. The invoice imports verity as to the quantity and quality. The vendor so intends it, and knows that the vendee so understands the contract, and the vendor would be guilty of fraud, if it were not so, as he must be supposed to know the contents precisely. In the case here, nothing of the kind was in contemplation of the parties. But we may suppose a package of goods to have become damaged; to what extent could not be known till they were put to use; and a sale effected of the same upon the estimation of one or more persons, of the extent of the injury, which should ultimately prove erroneous, either falling short or exceeding the estimate. This would much more nearly resemble the case here; and yet the sale would be held valid.

In Story on Equity, § 150, it is laid down, that "where the fact is equally unknown to both parties; or where each has equal and adequate means of information; or *where the fact is doubtful from its own nature;* in every such case, if the parties have acted with entire good faith, a court of equity

will not interpose"; and again in § 151, it is said that "where each party is equally innocent, and there is no concealment of facts, which the other party has a right to know, and no surprise or imposition, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria.*

In *Daniel* v. *Mitchell & al.* 1 Story's R. 172, cited for the plaintiff, the decree was, that "the contract of sale, and the conveyance of the premises, and the notes of the said Daniel thereupon, as set forth in the bill, were made by and between the said Otis Daniel, and the said James Todd, and other parties, *upon material misrepresentations,* and mutual mistakes, *as to the quantity of timber so sold, and therefore ought to be set aside, and held null and void.*" The Judge, in his reasoning, says, "Here then we have a tract, represented by the vendors in their contract, as containing sixty millions of timber, and that supposed fact constituting the very basis of the bargain, when in fact it does not contain more than one twelfth part of that quantity." There was no doubt expressed, but that the representations were made in the full belief of their accuracy. But such representations, so grossly erroneous, however innocently made, were calculated to mislead; and the party purchasing, as in that case, having no other means of possessing himself of actual knowledge of how the fact was, must be expected to rely upon the representations so made; and, if wronged thereby, should find redress. But where the buyer is not led astray by any such misrepresentations, and acts without being influenced by any statements of the vendor; and in a case where there is unavoidably much of uncertainty; and in a speculation which, for aught that could be predicted, might turn out very advantageously, or very much otherwise, we cannot deem any error, into which the buyer might fall, in his calculation upon his profits, to be an adequate ground for rescinding his engagement, either in whole or in part.

The case of *Reed's adm'rs* v. *Cramer & al.* also cited on the part of the plaintiff, from 1 Green's Ch. R. 277, was one of a gross mistake on the part of the vendor of real estate, by

including in his description of the land intended to be sold, of which he was not aware, owing to his ignorance of its boundaries, a piece other and much larger than the one intended to be conveyed, and which the vendee, at the time, well knew the vendor did not know to be so included, clearly intending a fraud upon him; a case every way distinguishable from the one here.

The lapse of time intervening in this case, between the sale and the institution of the suit, might well induce a court of equity to pause before granting relief, even in a case presenting some strong indications of a want of good faith, on the part of the defendant. The testator, it would seem, lived some three or four years after the sale; and his executors had administered, and in a manner settled his estate, in the course of three or more years after his decease, without being notified of this claim. If the *gravamen* of the plaintiff's case was so enormous, as in his bill is set forth, such apathy would seem to be inexplicable. People do not often, if at all, so long slumber over such grievous injuries, without seeking for redress. And after a long period has occurred since a cause of action has accrued, and after events have rendered it highly perplexing, that the subject should be agitated, it has not been uncommon for a court of equity to decline to interfere.

On the whole, however much we may regret the misfortune of the plaintiff, we are brought to the conclusion, that his bill must be dismissed, with costs for the defendants.